UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL DONALD HANSEN,<br><br>Defendant. | 4:21-CR-40080-01-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING IN PART AND GRANTING IN PART MOTION TO SUPPRESS |

Defendant, Paul Donald Hansen, is charged in an indictment with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d), 5845, and 5871. Docket 1. Hansen moves to suppress all evidence seized as the result of the search of his vehicle on October 3, 2020. Docket 28. Hansen alleges that the initial stop, extended duration of the stop, and actual search of his vehicle violate the Fourth Amendment. Dockets 28, 29. Hansen also moves to suppress statements that he made to a law enforcement officer on October 3, 2020, under both the Fourth and Fifth Amendments.[1] Docket 28. The United States resists Hansen's motion to suppress. Dockets 32, 33. The court referred Hansen's motion to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate

---

[1] Magistrate Judge Duffy recommends that all of Hansen's statements made to the officers after he was placed into handcuffs at approximately the 33:15 mark in Exhibit 1 should be suppressed in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Docket 36 at 33-34. Magistrate Judge Duffy further recommends that all statements made by Hansen prior to him being placed in handcuffs should not be suppressed because he was not in custody at that point. Neither party objects to Magistrate Judge Duffy's conclusions. The court agrees with Magistrate Judge Duffy's conclusions. Thus, Magistrate Judge Duffy's reasoning and conclusions on the *Miranda* issues are adopted in full.

Judge Duffy recommended Hansen's motion to suppress be denied in part and granted in part. Dockets 36, 38. Hansen filed objections to the Report and Recommendation. Docket 41. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies in part and grants in part Hansen's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and Recommendation (Docket 36). The court has conducted a de novo review of the evidence[2] and

---

[2] The evidentiary hearing was held on November 24, 2021. *See* Docket 34. Exhibits 1 and 2 were received by Magistrate Judge Duffy. Exhibit 1 depicts three different video angles from Officer Hoesli's patrol vehicle. Exhibit 2 depicts the video from Sergeant Crosby's dash cam.

incorporates herein the facts as set forth in Magistrate Judge Duffy's Report and Recommendation.

## DISCUSSION

Hansen raises three objections to Magistrate Judge Duffy's Report and Recommendation related to his rights under the Fourth Amendment. Docket 41.

**I.     Reasonable Suspicion Existed to Approach Hansen's Vehicle.**

Hansen first objects to Magistrate Judge Duffy's finding Officer Hoesli had reasonable suspicion to approach Hansen's vehicle. *Id.* at 5-6.

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). A routine traffic stop, then, is similar to a *Terry* stop, rather than a formal arrest. *Id.*

Under *Terry v. Ohio*, a brief investigatory stop must be supported by reasonable suspicion that criminal activity may be afoot. 392 U.S. 1, 30 (1968); *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020). "The 'reasonable suspicion' necessary to justify [a traffic] stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' " *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). To determine whether reasonable suspicion exists, the court considers the totality of the circumstances considering the officer's experience and specialized training. *Slater*, 979 F.3d at 629; *United States v. Green*, 946 F.3d 433, 439 (8th Cir. 2019). "Although the reasonable-suspicion standard requires more than 'a mere hunch . . . the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably

3

short of satisfying a preponderance of the evidence standard.' " *Slater*, 979 F.3d at 629 (alteration in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Because review of reasonable suspicion depends upon a totality of the circumstances analysis, the court does not view individual elements of suspicion in isolation. *United States v. Sanchez*, 955 F.3d 669, 675 (8th Cir. 2020). Instead, the individual elements of suspicion are viewed in light of one another, and the court gives " 'due weight' to the officer's inferences when assessing the overall level of suspicion." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Hansen objects to Magistrate Judge Duffy's conclusion that reasonable suspicion existed for Officer Hoesli to approach Hansen's vehicle. Docket 41 at 5-6. Here, Hansen's vehicle was parked in a construction area at 1 a.m. near an RV dealership where multiple thefts had occurred. *See* Docket 38 at 7-8, 45-46. Sergeant Crosby testified that he and Officer Hoesli previously received a tip from an employee of the RV dealership that "people were parking to the west of the [dealership] and walking onto the business property because he could see footprints in the dirt in that area." *Id.* at 46. Sergeant Crosby further testified that, in the past, he took reports of vehicle burglaries, tire rim thefts, catalytic converter thefts, and electronic thefts out of the RV dealership. *Id.* Sergeant Crosby also noted that, from his training and experience, people that are involved in thefts are also commonly involved in drug activity. *Id.* at 46-47.

Hansen argues that he was parked roughly 600 yards away from the RV dealership, which, he contends, would be an absurd place to park for someone who planned to burglarize the RV dealership. Docket 41 at 6. The court's review of Exhibit 2 demonstrates that Hansen's vehicle is clearly visible and in close proximity to the RV dealership as Sergeant Crosby drives through the dealership. As Sergeant Crosby

testified, he had information that people parked west of the RV dealership and walked onto the property to commit thefts of property. Docket 38 at 46. It is not inconceivable for someone to park away from the RV dealership to avoid detection, walk to the lot, and commit theft. Hansen's proximity to the RV dealership, combined with the time of day and previous reports of theft from the RV dealership, established reasonable suspicion for Officer Hoesli to approach Hansen's vehicle. Thus, Hansen's first objection is overruled.

## II.     The Seizure Was Not Unlawfully Prolonged.

Hansen next objects to Magistrate Judge Duffy's conclusion that the seizure was not unlawfully prolonged. Docket 41 at 6-10. Specifically, Hansen contends that any reasonable suspicion for the initial stop was dispelled upon Officer Hoesli making contact with Hansen. *Id.* at 9.

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). An officer's mission during a traffic stop also includes "ordinary inquiries incident to [the traffic] stop." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Generally, those inquiries "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. Thus, a traffic stop may only last as long as necessary to achieve that mission. *Id.* "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *Id.*; *see also Caballes*, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that

mission."). Absent at least reasonable suspicion of additional criminal activity, officers "may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original mission." *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020).

Hansen contends that Officer Hoesli and Sergeant Crosby unlawfully prolonged the seizure. Docket 41 at 6-10. Specifically, Hansen argues that the seizure's original mission and related tasks should have been completed by the 21:00 minute mark of the stop. *Id.* at 10. Because Sergeant Crosby did not observe the syringe in Hansen's vehicle until the 32:32 mark, Hansen alleges that he was unlawfully seized for the 11 intervening minutes. *Id.* Here, the court agrees with Magistrate Judge Duffy that there were complications with routine tasks associated with the traffic stop and reasonable suspicion of further criminal activity that lawfully prolonged the seizure. First, regarding reasonable suspicion, Officer Hoesli and Sergeant Crosby suspected prostitution when they encountered Hansen and his passenger, Nadia Khalil, due to the age difference between the two, the time of day, and the fact that they were in a construction zone. Docket 38 at 10-12, 48; *see also* Exhibits 1, 2. The stop was lawfully extended for the officers to investigate and dispel their suspicion.

Second, both Hansen's and Khalil's behavior gave rise to reasonable suspicion. Officer Hoesli testified that when Khalil exited the vehicle, "she seemed very distant, disinterested, out of it[,]" and sluggish. *Id.* at 15. Based on Officer Hoesli's experience as an emergency medical technician, he believed that Khalil was either under the influence of a narcotic or experiencing a medical event. *Id.* at 16. Sergeant Crosby also suspected that Khalil may be impaired due to her "zoned out" demeanor. *Id.* at 53. Sergeant Crosby states that he believes Khalil is under the influence of some narcotic on more than one occasion in the court's review of Exhibit 1. Officer Hoesli further

6

testified that he found it suspicious that Khalil did not want her purse brought with her to the jail after she discovered she would be arrested for her active warrant. *Id* at 18. Regarding Hansen, Officer Hoesli testified that he was nervous during the stop. *Id.* at 23. Sergeant Crosby testified that he felt Hansen was trying to control his movements, which he found to be suspicious. *Id.* at 53. Hansen can be heard on Exhibit 2 telling Sergeant Crosby to "calm down" and that "it's not you against me, it's us against them." Hansen is also audibly nervous on Exhibit 2 when Sergeant Crosby directs him to sit in his patrol vehicle, asking Sergeant Crosby multiple times if he can stay outside of the vehicle. The court agrees with Magistrate Judge Duffy that both Hansen and Khalil's suspicious behavior amounted to reasonable suspicion that the two may have been involved in drug activity, which lawfully extended the stop for the officers to investigate.

      Third, and most importantly, the officers learned that Khalil had an active warrant for her arrest in Brookings County. The officers received verbal confirmation from Brookings County that it wanted Khalil arrested at approximately the 20:50 mark on Exhibit 1. The officers did not receive written confirmation from Brookings County that it wanted Khalil taken into custody until approximately the 55:00 mark on Exhibit 1. A traffic stop may last as long as necessary to achieve the mission of the traffic stop and related inquiries, including dealing with an active arrest warrant. *Rodriguez*, 575 U.S. at 355. The court agrees with Magistrate Judge Duffy and finds that Khalil's warrant and related complications arising from its execution lawfully prolonged the seizure until at least the 55:00 mark into the seizure.

      Because law enforcement had reasonable suspicion that Hansen and Khalil may be engaged in additional criminal activity and because Khalil had an active arrest

warrant, the seizure was not unlawfully prolonged. Thus, Hansen's second objection is overruled.

### III. The Plain View Exception to The Warrant Requirement Applies to The Search of Hansen's Vehicle.

Finally, Hansen objects to Magistrate Judge Duffy's conclusion that the plain view exception to the warrant requirement applied to the warrantless search of Hansen's vehicle. Docket 41 at 10-11. Hansen argues that the officers were not lawfully present at his vehicle when they observed the syringe. *Id.* at 10. Additionally, Hansen contends that the incriminating nature of the syringe was not readily apparent to the officers. *Id.* at 10-11.

"A warrantless [search] 'is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions.'" *United States v. Lewis*, 864 F.3d 937, 943 (8th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)). One such exception is the plain view exception. *See generally Horton v. California*, 496 U.S. 128, 133 (1990). Under the plain view exception, the government is required to prove (1) the officer is lawfully present in the place where the evidence could be plainly viewed; (2) the incriminating nature of the object is immediately apparent to the officer; and (3) the officer has lawful access to the object. *Lewis*, 864 F.3d at 943

The court must first determine whether the officers were lawfully present when they observed the syringe in Hansen's vehicle in plain view. The court previously determined that the stop was lawfully prolonged until at least approximately the 55:00 mark in Exhibit 1 due to the existence of reasonable suspicion that Hansen and Khalil were engaged in drug activity and complications arising from Khalil's arrest warrant. Because the officers observed the syringe at approximately the 33:20 mark in Exhibit 1, long before they received written confirmation of Khalil's arrest warrant, they were

8

lawfully present and able to look through the windows of Hansen's vehicle for any incriminating objects. *See United States v. Beatty,* 170 F.3d 811, 814 (8th Cir. 1999) (noting that neither reasonable suspicion nor probable cause is necessary for an officer to look inside the windows of a vehicle so long as officers have a right to be in close proximity to the vehicle). Because the officers were lawfully present when they observed the syringe in plain view, the court also concludes that the officers had lawful access to the syringe because they did not have to manipulate the syringe in any way to observe it. *See Minnesota v. Dickerson,* 508 U.S. 366, 375 (1993) (holding that plain view cannot justify the seizure of an item if its incriminating nature is not immediately apparent without some further search of the item).

Hansen finally contends that "there was nothing inherently criminal about" the syringe that Sergeant Crosby observed in plain view. Docket 41 at 10. Under the second prong of the plain view analysis, "officers must have 'probable cause to associate the property with criminal activity.' " *United States v. Brooks,* 645 F.3d 971, 976 (8th Cir. 2011) (quoting *United States v. Hatten,* 68 F.3d 257, 261 (8th Cir. 1995)). Probable cause does not require hard certainties, but only that the facts would warrant a reasonable person to believe that the item *may* be contraband or evidence of a crime. *Hatten,* 68 F.3d at 261. In Exhibits 1 and 2, Hansen can be heard arguing that he is a diabetic and that the syringe is a medical device. As Magistrate Judge Duffy noted, the officers were not required to believe Hansen's explanation for the presence of the syringe. *See* Docket 36 at 29.

Here, the officers had probable cause to associate the syringe with drug activity because they both believed, and it appeared, that Khalil was under the influence of some narcotic. Additionally, Officer Hoesli testified that in his experience as an emergency medical technician, most diabetics no longer use syringes to inject insulin.

9

*See* Docket 38 at 22-23. Both officers testified that syringes like the one observed in Hansen's vehicle are indicative of narcotics use. *Id.* at 22, 55. The law does not require that the officers be certain that the syringe is evidence of criminal activity, it only requires that a reasonable person believe that the syringe may be evidence of criminal activity. *See Hatten*, 68 F.3d at 261. Under the circumstances, the court finds that the syringe, coupled with Hansen's and Khalil's behavior, gave the officers probable cause to believe that it may be evidence of criminal activity.

The officers were lawfully present when they observed the syringe in Hansen's vehicle. Given the surrounding circumstances, the incriminating nature of the syringe was apparent to both Officer Hoesli and Sergeant Crosby. Finally, because the officers did not have to manipulate the syringe to determine its incriminating nature, they had lawful access to it. Thus, the plain view exception to the warrant requirement applies and Hansen's final objection is overruled.

## CONCLUSION

Hansen's initial seizure by Officer Hoesli was supported by reasonable suspicion. Hansen's seizure was not unlawfully prolonged because Officer Hoesli and Sergeant Crosby developed reasonable suspicion that Hansen and Khalil may be engaged in narcotic activity and because of complications arising from Khalil's arrest warrant out of Brookings County. Next, the plain view doctrine applies to the search of Hansen's vehicle and resulting seizure of incriminating evidence, including the shotgun that is the basis for Hansen's indictment. Finally, Hansen's statements prior to being placed in handcuffs are admissible under the Fifth Amendment, but his statements after being placed in handcuffs are suppressed as violating *Miranda*. The court adopts Magistrate Judge Duffy's report and recommendation as modified and denies in part and grants in part Hansen's motion to suppress. Thus, it is

ORDERED that the report and recommendation (Docket 36) denying in part and granting in part Hansen's motion to suppress is adopted as modified by this opinion.

Dated February 3, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE